**Linda K. SIMLER, Plaintiff,**

v.

**HARRISON COUNTY HOSPITAL,
Defendant.**

No. NA 99–108 C B/G.

United States District Court,
S.D. Indiana,
New Albany Division.

Aug. 28, 2000.

Bart Colomb, New Albany, IN, for Plaintiff.

Gregory W. Moore, Hall Rernder Killian Heath & Lyman, Indianapolis, IN, for Defendant.

## *ENTRY DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING CASE TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION*

BARKER, Chief Judge.

Plaintiff, Linda K. Simler, sued her employer, Harrison County Hospital ("Hospital"), alleging that Defendant discriminated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, when her employment was terminated as part of a reduction-in-force ("RIF") in the Home Health Department ("Home Health") at the Hospital. Defendant responded that Plaintiff's claim was not timely filed and that, even if the claim had been timely filed, Ms. Simler's suit must fail due to her inability to satisfy the elements of a discrimination claim on the basis of the facts alleged. Defendant moved for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 56.1 and 7.1 of the United States District Court of the Southern District of Indiana. For the reasons discussed below, the Defendant's Motion for Summary Judgment is *DENIED*, and it is hereby *ORDERED* that Ms. Simler's claim is *REMANDED* to the Equal Employment Opportunity Commission ("EEOC" or "Commission"). After the EEOC conducts its investigation of Plaintiff's claim in accordance with 42 U.S.C. § 2000e5(b), this case may be re-opened on the Court's docket upon prompt application by Plaintiff.

### *Background Facts*

In 1979, Ms. Simler began her employment at the Hospital as a ward clerk. By

1995 when she was transferred to Home Health, she had become a registered nurse ("R.N.") and had worked in various other divisions of the Hospital as a staff nurse. She was promoted to the position of charge nurse/clinical coordinator in October of 1996 and took on administrative tasks in addition to her direct patient care duties. In January of 1998, Ms. Simler was demoted from this administrative position to her prior job as staff nurse in Home Health. Lisa Steele, Director of Nursing, stated that she was disciplined for providing nursing services to a patient without a physician's order. Also in January, Ms. Simler requested a medical leave of absence for heart surgery.

Following Ms. Simler's surgery, on May 21, 1998, her doctor released her to return to work without documenting any restrictions. Ms. Simler, however, was concerned about her stamina. Therefore, her work consisted of administrative duties and caring for other nurse's patients. Ms. Simler was not maintaining her own patient case load. In August of 1998, Home Health began its RIF due to a decline in its patient census that came about because of recent changes in Medicare eligibility and reimbursement for home healthcare services. Ms. Simler was laid off from her staff nurse position on October 2, 1998. Soon thereafter, she became an R.N. case manager at Humana Insurance.

The Hospital maintains that Ms. Simler was selected for layoff because she was performing primarily administrative duties and because the department's other administrator, Martha Harris, was more qualified for the job. Ms. Simler claims that she had more seniority than the department's other staff nurses to whom she believes she should have been compared and that the reasons given for her termination were a pretext for terminating her employment because of her physical disability. Ms. Simler filed a discrimination charge with the EEOC on March 28 or March 29, 1999.[1] Approximately fifteen days later, on April 13, 1999, the EEOC issued a Notice of Rights letter stating that Ms. Simler could file a lawsuit in federal court on the basis of the charge she had filed with the Commission. On June 18, 1999, Ms. Simler filed her complaint.

## Analysis

Borrowing from Title VII, the ADA affords those who believe they have been discriminated against by an employer a process by which to complain of such conduct. 42 U.S.C. § 12117. The complainant must first file a charge with the EEOC. Title VII provides that the courts may become involved only after the EEOC has disposed of the charge in one of several ways:

> "If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge ... the Commission has not filed a civil action ... or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge."

42 U.S.C. § 2000e–5(f)(1). Such notice is commonly referred to as a "right-to-sue letter."

In its Brief in Support of Defendant's Motion for Summary Judgment, the Hospital asks the Court to grant its motion on the grounds that the Commission issued a right-to-sue letter approximately fifteen days after Ms. Simler filed her discrimination charge. The Hospital points out that fifteen days is well short of the 180 days that the Defendant believes the statute

---

1. The record is unclear as to which date Ms. Simler filed the discrimination charge with the EEOC.

requires to pass between the filing of the charge and the issuance of the right-to-sue letter. Plaintiff entreats the Court to read the statute differently, permitting the early issuance of the right-to-sue letter so that her suit can proceed expeditiously. After a thorough review of the statute and a body of case law that has undergone a great deal of change in the past year, we are of the opinion that neither party reads the statute exactly as it is written. Rather than focus on the passage of time, the correct interpretation of the statute centers on the actions of the EEOC. Accordingly, we have concluded that the case must be remanded to the Commission so that the EEOC can fulfill its statutory duty to investigate Ms. Simler's charge.

*Development of the Case Law*

We review here the development of case law on the question presented.

The controversy concerning the duties that the EEOC must fulfill before issuing a right-to-sue letter first focused on the validity of a regulation, 29 C.F.R. § 1601.28(a)(2), purporting to permit the Commission to issue a right-to-sue letter before 180 days have passed since the filing of the charge. The regulation states that:

> [w]hen a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued, ... the Commission may issue such notice ... at any time prior to the expiration of 180 days from the date of filing the charge with the Commission; provided that [one of several EEOC officials] has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect.

29 C.F.R. § 1601.2(a)(2).

The Seventh Circuit is one of the few courts not to have weighed in on the validity of the regulation. Examining the regulation in light of 42 U.S.C. § 2000e–5(f)(1), the Ninth and Eleventh Circuits have ruled that 180 days is not a minimum time limit, thereby allowing the EEOC to issue a right-to-sue letter at any time after receiving the charge and request for notice. *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726 (9th Cir.1984); *Sims v. Trus Joist MacMillan*, 22 F.3d 1059 (11th Cir.1994). Other district courts within the Seventh Circuit seem to agree with that interpretation. Most notably, the Northern District of Illinois upheld the validity of the regulation, reasoning that "[w]e do not think that Congress has so clearly resolved the dispute that the EEOC, which has been delegated the authority to administer Title VII claims, has been proscribed from filling gaps that the Act has left open." *Rolark v. University of Chicago Hosps.*, 688 F.Supp. 401, 404 (N.D.Ill.1988) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). *See also Parker v. Noble Roman's, Inc.*, 1996 WL 453572 at *2 (S.D.Ind. June 26, 1996) (accepting the validity of the regulation). However, other district courts, basing their decisions on an analysis of 42 U.S.C. § 2000e–5(f)(1), have found the regulation to be invalid and dismissed complaints for which right-to-sue letters had been issued prior to the expiration of the 180–day period. *See, e.g., Montoya v. Valencia County*, 872 F.Supp. 904, 906 (D.N.M.1994); *People of New York v. Holiday Inns, Inc.*, 656 F.Supp. 675, 680 (W.D.N.Y.1984); *Loney v. Carr–Lowrey Glass Co.*, 458 F.Supp. 1080, 1081 (D.Md. 1978).

The Court of Appeals for the District of Columbia added fuel to this debate by broadening the scope of inquiry for the purposes of conducting a *Chevron* analysis. *Martini v. Federal Nat. Mortg. Ass'n*, 178 F.3d 1336 (D.C.Cir.1999). Like the courts that had previously ruled on the EEOC's interpretation of the statute as expressed in the regulation, the D.C. Circuit started with the basic *Chevron* analysis. *Martini*, 178 F.3d at 1342. *Chevron* directs that

"[w]hen a court reviews an agency's construction of the statute which it administers," it must first determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781. Thus, the D.C. Circuit appears to have struck out on a different path when it "look[ed] not only 'to the particular statutory language at issue,' but also to 'the language and design of the statute as a whole.' " *Martini*, 178 F.3d at 1345 (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) (additional citations omitted)). Prior courts had examined only the language and legislative history of 42 U.S.C. § 2000e–5(f)(1). The D.C. Circuit instead focused on the language of 42 U.S.C. § 2000e–5(b) to determine whether the regulation permitting the EEOC to issue right-to-sue letters prior to the 180th day, 29 C.F.R. § 1601.28(a)(2), conflicted with 42 U.S.C. § 2000e–5. The key statutory provision cited in the *Martini* analysis states that "[w]henever a charge is filed by or on behalf of a person claiming to be aggrieved ... alleging that an employer ... has engaged in an unlawful employment practice, the [EEOC] ... *shall make an investigation thereof.*" 42 U.S.C. § 2000e–5(b) (emphasis added). Based on this language, the D.C. Circuit determined that the EEOC's "duty to investigate is both mandatory and unqualified." *Martini*, 178 F.3d at 1346. The court further ruled that the Commission cannot issue right-to-sue letters until 180 days had passed since the filing of the charge and that the regulation authorizing such action was invalid. *Id.*

The *Martini* decision prompted other courts to shift their analysis when examining the propriety of a plaintiff's right-to-sue letter. Noting the discrepancy between the *Martini* court's reasoning and the broad reach of its ruling, courts now ask if the complainant must wait for the entire 180–day investigation period before filing suit or if a shorter investigation satisfies the requirement set out by 42 U.S.C. § 2000e–5(b). *Tesfaye v. Carr Park, Inc.*, 85 F.Supp.2d 37, 38–39 (D.D.C.2000) (finding that the investigation may be shorter than 180 days); *Berry v. Delta Air Lines, Inc.*, 75 F.Supp.2d 890, 892 (N.D.Ill.1999) (same); *Maple v. Publications Intern., Ltd.*, 2000 WL 85951, at *2 (N.D.Ill. Jan.19, 2000) (same); *Horne v. Schult Homes Corp.*, 1999 WL 1953131 (N.D.Ind. Sept.10, 1999) (same); *Allaire v. HSBC Bank USA*, 2000 WL 743976, at *1 (W.D.N.Y. May 2, 2000) (same). Judge Zagel (N.D.Ill.) in *Berry* summed up the position taken by these courts, writing "[w]hile it is clear that the EEOC must investigate, it is not clear that it must spend 180 days to do so." The District Court for the District of Columbia in *Tesfaye* seems to take the greatest interest in clearing up the inconsistency between the broad language of the *Martini* opinion and the reasoning the D.C. Circuit used to reach its conclusion, holding that when "the EEOC apparently investigated the plaintiff's claim and simply concluded before 180 days had passed that it lacked merit," then "the plain language of section 2000e–5(b) permitted the issuance of a valid right to sue letter before the expiration of 180 days." *Tesfaye*, 85 F.Supp.2d at 38.

■ Following these other district courts within the Seventh Circuit, we agree with the *Tesfaye* conclusion that an investigation, short of 180 days, can satisfy the requirement of 42 U.S.C. § 2000e–5(b) that the Commission investigate every charge filed. However, we find ourselves in disagreement with certain interpretations of what EEOC actions constitute an "investigation." For example, in *Berry*, the district court noted that "the regulation conditions an early right-to-sue letter on a determination by an appropriate Commission official that it is probable that the EEOC will not complete the administrative processing of the charge within 180

days." *Berry*, 75 F.Supp.2d at 892 (citing 29 C.F.R. § 1601.28(a)(2)). Reasoning that a finding by the EEOC that it will be unable to finish administrative processing in the allotted time is "equivalent to a finding that a right-to-sue letter is likely to issue in any event," the *Berry* court concluded that the regulation satisfied the requirement to investigate in 42 U.S.C. § 2000e–5(b). *Id.*

We understand the practical appeal of such a distinction. However, we are of the view that a "determin[ation] that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge," 29 C.F.R. § 1601.28(a)(2), is not tantamount to an investigation of the charge. It is simply an evaluation that the EEOC, an agency with an admittedly heavy caseload and comparatively few resources, prefers not to begin an investigation that it estimates it cannot complete. The Seventh Circuit has noted the Commission's pattern of giving shallow treatment to some of the complaints it receives. *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 926 (7th Cir. 2000) ("Many decisions by the EEOC are superficial, little more than precursors to right-to-sue letters."). In *Allaire v. HSBC Bank USA*, 2000 WL 743976, at *1 (W.D.N.Y. May 2, 2000), the District Court for the Western District of New York also recognized the implication of this criticism in light of 42 U.S.C. § 2000e–5(b). In that case, the EEOC had received the charge on a Thursday and issued the right-to-sue notice on the following Tuesday. *Id.* The court ruled that "[s]uch cursory treatment simply does not comport with section 2000e–5(b)'s 'express requirement that the [EEOC] investigate every charge filed.'" *Id.* (quoting *Martini*, 178 F.3d at 1346).

*Application of the Law to Ms. Simler's Claim*

■ The cursory approach by the EEOC that was criticized in *Lang* and *Allaire* appears to be little better in this case. Approximately fifteen days after receiving Ms. Simler's discrimination charge, the Commission issued a right-to-sue letter. The sentiments expressed in the *Allaire* decision, that "unless the EEOC has suddenly become the very model of governmental efficiency, the present records suggests that the EEOC merely opened and closed plaintiff's file for the sole purpose of providing a right-to-sue notice," also apply here. *Id.* The letter sent to Ms. Simler states that "the Commission has determined that it will not be able to investigate and conciliate [your] charge within 180 days of the date the Commission assumed jurisdiction over the charge." Neither the letter nor any other part of the record indicates that *any* investigation of the charge was undertaken by the EEOC.[2] The facts indicate that the EEOC issued the right-to-sue letter as a matter of administrative convenience. *See also Stetz v. Reeher Enterprises, Inc.*, 70 F.Supp.2d 119, 125 (N.D.N.Y.1999) ("the record fails to demonstrate that any meaningful investigation or conciliation occurred with respect to the allegations made by any of the plaintiffs; rather the EEOC dismissed the matter on the basis of *administrative convenience* only weeks after plaintiffs filed their administrative complaints.") (emphasis added). Such treatment fails to comply with the statutory requirement that the EEOC investigate every charge filed with its office. 42 U.S.C. § 2000e–5(b).

*Disposition of the Case*

Having applied the statutory and case law to Ms. Simler's claim, questions remain as to the procedural posture of the

---

**2.** In this respect, Ms. Simler's case differs from that in *Parker v. Noble Roman's, Inc.*, 1996 WL 453572, at *1 (S.D.Ind. June 26, 1996), also from the Southern District of Indiana. After receiving Parker's charge, the EEOC contacted the defendant to discuss set-

tlement. *Id.* While the EEOC may not have conducted a thorough investigation of Parker's charge, the record in *Parker* indicates that the EEOC attempted to fulfill its duties–a conclusion that cannot be made here.

case. The Seventh Circuit recently confirmed that failure to exhaust administrative remedies in Title VII cases is not a jurisdictional requirement. *Gibson v. West,* 201 F.3d 990, 993 (7th Cir.2000). Rather it is a precondition to bringing a Title VII claim in federal court. *Id.* As such, it is subject to waiver, estoppel and equitable tolling. *Id.* at 993–94. No equitable considerations warranting an exception to the EEOC's duty to investigate have been presented here. Therefore, the Court denies Defendant's Motion for Summary Judgment but remands the case to the EEOC so that it may have the opportunity to investigate Plaintiff's claim.

There is no doubt that the disposition of this case will cause this and other, future complainants some delay in pursuing their claims of discrimination. We acknowledge that the EEOC has a significant workload and inadequate resources for dealing with it. For this reason no doubt, some courts have construed the regulation, 29 C.F.R. § 1608.28(a)(2), as permitting the Commission to issue a right-to-sue letter on a determination that it is probable that the EEOC will not complete the administrative processing of the charge within 180 days. *Berry,* 75 F.Supp.2d at 892–93 (pointing out that the regulation allows the EEOC to "move on" to the next case). While the regulation arguably permits the Commission to ignore cases for which it feels it does not have enough time, we do not view this as consonant with the mandates imposed by the statute which expressly requires the Commission to investigate each and every charge filed with its office, and that would include Ms. Simler's charge. 42 U.S.C. § 2000e–5(b).

We are in no wise naive about the implications of this holding requiring as it does the EEOC to investigate every charge filed with it that does not warrant dismissal on its face. At the very least, it will put considerable pressure on the EEOC to improve the efficiency of its operations. *See Martini,* 178 F.3d at 1347 (noting that requiring the Commission to wait 180 days before issuing a right-to-sue letter would subject the EEOC to internal and external pressure to streamline its procedures). We would not presume to suggest the ways in which the EEOC might go about meeting this requirement but suspect that one approach might entail the agency making distinctions in the kinds of investigations it conducts. If such an operational standard ultimately proves impossible under existing agency realities, more funding or a change in the duties of the Commission may be in order. We must leave these matters to others to resolve. Our obligation has been discharged by our analysis and decision that the obligations already imposed by Congress in 42 U.S.C. § 2000e–5(b) be complied with. Similarly, we leave to another day a determination of what type of investigation will meet statutory requirements.

### Conclusion

Defendant's Motion for Summary Judgment is *DENIED.* The case is *REMANDED* to the Equal Employment Opportunity Commission. After investigation, this case may be re-opened upon proper application by Plaintiff.