Keith R. KING, Plaintiff,

v.

DUNN MEMORIAL HOSPITAL, The Board of Trustees of Dunn Memorial Hospital a/k/a The Board of Governors, Young, Randall individually & in his official capacity as Chairman of The Board of Trustees of Dunn Memorial Hospital a/k/a The Board of Governors, Defendants.

No. NA 00–96–C H/G.

United States District Court,
S.D. Indiana,
New Albany Division.

Nov. 16, 2000.

Gary P. Goodin, Goodin Orzeske & Stevens, Indianapolis, IN.

Stephen W. Lyman, Hall Render Killian Heath & Lyman, Indianapolis, IN.

### ENTRY ON DEFENDANTS' MOTION TO STAY

HAMILTON, District Judge.

Defendants Dunn Memorial Hospital, the Board of Trustees of Dunn Memorial Hospital, and Randall Young have moved to stay all proceedings in this case pending a remand of plaintiff Keith King's disability discrimination claim to the Equal Employment Opportunity Commission

("EEOC"). Defendants contend that plaintiff's claim is premature because the EEOC never investigated King's claim. The EEOC issued a right-to-sue letter almost immediately after King filed his charge, relying on 29 C.F.R. § 1601.28(a)(2). Defendants contend the regulation is invalid. As explained below, this court agrees with the Ninth and Eleventh Circuits and with Judges Dillin and Miller that the EEOC regulation is valid. The court disagrees with the District of Columbia Circuit and Judge Barker, who both held the regulation invalid. Accordingly, defendants' motion to stay is denied.

### Factual Background

Plaintiff King worked as the executive director of Dunn Memorial Hospital from September 1, 1999, until he was fired on or about January 14, 2000. King filed this action on June 5, 2000. His original complaint alleged breach of contract, deprivation of property and liberty interests without due process of law, and invasion of privacy.

On July 14, 2000, King filed a charge of disability discrimination against Dunn Memorial Hospital with the EEOC (as well as with the Indiana Civil Rights Commission). King asserted he was fired because of a record of a disability in violation of the Americans with Disabilities Act ("ADA"). At the same time King filed his charge with the EEOC, in a letter dated July 14, 2000, King's attorney asked the EEOC to issue a "right-to-sue" letter immediately. The EEOC issued a Notice of Charge of Discrimination dated July 14, 2000 which informed Dunn Memorial Hospital that it did not need to respond to King's charge. The EEOC then issued King a right-to-sue letter on July 24, 2000. There is no indication that the EEOC undertook any actual investigation of King's claim.

After receiving the right-to-sue letter, King filed an amended complaint alleging that Dunn Memorial Hospital and its Board of Trustees discriminated against him in violation of the ADA. Defendants then moved to stay all proceedings and to "remand" King's ADA claim to the EEOC for further administrative action.

### Discussion

The Americans with Disabilities Act incorporates by reference the remedial procedures of Title VII of the Civil Rights Act of 1964, as amended. See 42 U.S.C. § 12117. Those procedures require a complaining party to file a timely charge of discrimination with the EEOC or a state or local civil rights agency. See 42 U.S.C. § 2000e–5(b) & (e). Title VII directs the EEOC to notify the employer of the charge. 42 U.S.C. § 2000e–5(b). The EEOC then "shall investigate" the charge and either dismiss it or make a reasonable cause finding. *Id.* Title VII instructs the EEOC to make its reasonable cause determination "as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge." *Id.* If the EEOC makes a reasonable cause finding, Title VII requires the EEOC to attempt conciliation of the charge. *Id.*

Title VII authorizes the EEOC to issue a so-called "right-to-sue" letter to an "aggrieved person" in certain circumstances so that the person may commence a private lawsuit. The statute provides:

> If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge ... the Commission has not filed a civil action ... or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge....

42 U.S.C. § 2000e–5(f)(1).

Title VII also authorizes the EEOC to "issue, amend, or rescind suitable procedural regulations to carry out the provisions of this subchapter." 42 U.S.C. § 2000e–12(a).

Defendants' motion for a stay is based on the fact that the EEOC issued King a right-to-sue letter just ten days after King filed his disability discrimination charge. King's case in this court was already pending on the day when King filed the charge and when King's attorney asked the EEOC to issue an immediate right-to-sue letter. King's attorney enclosed with his request a copy of the complaint. Def. Motion, Ex. 2. King's attorney wished to consolidate the disability discrimination claim with the other claims without undue and pointless delay. See Pl. Resp. in Opp.

An EEOC regulation permits early issuance of a right-to-sue letter upon request if an appropriate senior EEOC official determines "that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect." 29 C.F.R. § 1601.28(a)(2). A charging party must request the early right-to-sue letter in writing. *Id.* The issuance of a right-to-sue letter usually terminates the EEOC's processing of the charge. See 29 C.F.R. § 1601.28(a)(3).

In this case, the EEOC issued a right-to-sue letter on July 24, 2000, ten days after King filed his charge. Although the letter does not expressly say so, it is apparent that the EEOC issued the letter pursuant to 29 C.F.R. § 1601.28(a)(2). The letter was printed on a form with the heading "Notice of Right to Sue (Issued on request)." Am. Cplt., Ex. B. Using the regulation's language, the EEOC letter noted: "Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge." *Id.* The letter was signed by the director of the EEOC Indianapolis office. *Id.* The EEOC also stated it was "terminating its processing of this charge." *Id.* There is no evidence here that the EEOC undertook an investigation of King's charge. Indeed, by informing Dunn Memorial Hospital that no employer response was necessary on the day it received the charge, the EEOC effectively foreclosed the possibility of any meaningful investigation.

Based on these facts, defendants argue that plaintiff has not yet exhausted his administrative remedies with the EEOC, requiring what defendants call a "remand" to the EEOC and a stay of proceedings in this court of all of plaintiff's other claims. Defendants contend that 29 C.F.R. § 1601.28(a)(2) is invalid as contrary to Title VII.

■■■ The court evaluates the EEOC regulation under the two-part test announced in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If the intent of Congress is clear in a statute, and if the regulation is contrary to that clear intent, the regulation is invalid. *Id.* If however, the intent of Congress is ambiguous, the regulation is valid so long as it is a reasonable interpretation of the statute. *Id; Philbin v. General Electric Capital Auto Lease, Inc.*, 929 F.2d 321, 324 (7th Cir. 1991) (deferring to EEOC regulation), cited in *Berry v. Delta Air Lines, Inc.*, 75 F.Supp.2d 890, 892 (N.D.Ill.1999) (finding 29 C.F.R. § 1601.28(a)(2) to be valid). In analyzing the plain meaning of the statute, the court examines the statutory language at issue as well as the language and design of the statute as a whole. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988).

■■■ Applying *Chevron*, the federal courts have been divided on the validity of early right-to-sue letters issued under 29 C.F.R. § 1601.28(a)(2), see generally Helen D. Irvin, *Courts Differ on 'Early' Right-to Sue Letters; 180–Day Wait Conflicts with EEOC Resources*, 69 U.S.L.W. 2259 (Nov. 7, 2000), but the substantial weight of authority supports the EEOC's

regulation and its practice of issuing early right-to-sue letters upon request.

The Seventh Circuit has not addressed this issue, but two other circuits have squarely upheld the regulation against similar challenges. See *Sims v. Trus Joist MacMillan,* 22 F.3d 1059 (11th Cir.1994); *Brown v. Puget Sound Elec. Apprenticeship & Training Trust,* 732 F.2d 726 (9th Cir.1984). Numerous district court decisions have also upheld the regulation, including decisions by Judge Dillin of this court and Judge Miller of the Northern District of Indiana. See, *e.g., Parker v. Noble Roman's, Inc.,* 1996 WL 453572, at *2 (S.D.Ind. June 26, 1996) (Dillin, J.); *Horne v. Schult Homes Corp.,* 1999 WL 1953131, at *3–*7 (N.D.Ind. Sept.10, 1999) (Miller, J.) (collecting cases); see also *Richardson v. Valley Asphalt, Inc.,* 109 F.Supp.2d 1332, 1335–36 (D.Utah 2000) (collecting cases); *Commodari v. Long Island University,* 89 F.Supp.2d 353, 382–83 (E.D.N.Y.2000); *Berry,* 75 F.Supp.2d at 892; *Crandall v. Hard Rock Cafe Int'l Chicago, Inc.,* 1999 WL 1285864, *3 (N.D.Ill. Dec. 30, 1999) (collecting cases) (judges of Northern District of Illinois have "overwhelmingly" reached same conclusion); *Rolark v. University of Chicago Hospitals,* 688 F.Supp. 401, 402–04 (N.D.Ill.1988).

District court decisions rejecting the EEOC's practice and regulation include *Montoya v. Valencia County,* 872 F.Supp. 904, 906 (D.N.M.1994); *Henschke v. New York Hospital–Cornell Medical Center,* 821 F.Supp. 166, 171 (S.D.N.Y.1993); *People of the State of New York v. Holiday Inns, Inc.,* 656 F.Supp. 675, 680 (W.D.N.Y. 1984); *Mills v. Jefferson Bank East,* 559 F.Supp. 34, 35 (D.Colo.1983); *Loney v. Carr–Lowrey Glass Co.,* 458 F.Supp. 1080, 1081 (D.Md.1978).

Defendants rely primarily on Judge Barker's recent decision in *Simler v. Harrison County Hospital,* 110 F.Supp.2d 886 (S.D.Ind.2000). The facts there were essentially similar to those in this case—a right-to-sue letter issued at the request of the charging party's attorney just fifteen days after the charge was filed. Judge Barker held that 29 C.F.R. § 1601.28(a)(2) is invalid as contrary to Title VII, at least as applied to a case that the EEOC has not actually investigated. 110 F.Supp.2d at 890. Judge Barker remanded the plaintiff's charge to the EEOC so that the agency could fulfill its statutory duty to investigate the charge. *Id.*

Acknowledging the split of authority, Judge Barker noted that the District of Columbia Circuit had disagreed with earlier decisions that upheld the issuance of early right-to-sue letters pursuant to 29 C.F.R. § 1601.28(a)(2). *Simler,* 110 F.Supp.2d at 888, citing *Martini v. Federal National Mortgage Ass'n,* 178 F.3d 1336 (D.C.Cir.1999), *cert. dismissed by agreement,* —— U.S. ——, 120 S.Ct. 1155, 145 L.Ed.2d 1065 (2000). In *Martini,* the appellate court asserted that the EEOC's duty to "investigate" is "both mandatory and unqualified," and then held that 29 C.F.R. § 1601.28(a)(2) is invalid as contrary to Title VII under *Chevron.* See 178 F.3d at 1346–48. In a thorough and painstaking opinion, however, the court actually rejected most of the employer's arguments against 29 C.F.R. § 1601.28(a)(2) and observed ambiguities in Title VII's language and legislative history.

First, the *Martini* court rejected the argument that the Supreme Court had decided the issue in *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 361, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), finding that the language in question was *obiter dictum.* See *Martini,* 178 F.3d at 1341–42. Then, after reviewing several arguments based on the text of § 2000e–5(f)(1), which governs the procedures for bringing a private lawsuit, the court concluded: "Nothing in section 2000e–5(f)(1)'s language forecloses Martini's view that the 180–day provision is simply a maximum, not minimum, waiting period for complainants seeking access to federal court." *Id.* at 1344. The court then turned to the employer's arguments based on the struc-

ture, context, and legislative history of Title VII.

The court noted that, unlike other federal statutes that expressly prohibit filing court actions until a specified waiting period has passed, Title VII contains no such explicit language prohibiting early private suits or making agency jurisdiction exclusive for a period of time. *Id.* at 1344.

The employer in *Martini* also argued that Congress had been acutely aware of the EEOC's enormous backlog of cases in 1972 when it enacted the 180–day provision in § 2000e–5(f)(1) and that Congress therefore must have intended the 180–day period as a minimum waiting period in spite of the backlog. The court was again not convinced, and endorsed the employee's view that "authorizing early private suits in cases where the EEOC likely will be unable to resolve the charge within 180 days furthers Congress's intent to 'allow the person aggrieved to elect to pursue his or her own remedy . . . in the court where there is agency inaction, dalliance . . . or unsatisfactory resolution.'" 178 F.3d at 1345, quoting 118 Cong. Rec. 7168 (1972).

The *Martini* court then observed that, if it ended its inquiry there, with the arguments presented by the parties, it likely would have agreed with the Ninth and Eleventh Circuits, which have upheld the regulation. The court chose, however, to examine another statutory provision not briefed by the parties. Section 2000e–5(b) prescribes the EEOC's duties once a charge is filed, and it provides that the EEOC "shall" investigate the charge and "shall" make a reasonable cause determination "as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge." 42 U.S.C. § 2000e–5(b), quoted in 178 F.3d at 1346. The court described the duty to investigate as "both mandatory and unqualified." *Id.* The court found EEOC's early issuance of an early right-to-sue letter pursuant to 29 C.F.R. § 1601.28(a)(2) was inconsistent with the agency's obligation to "investigate" each charge:

> We think it implausible that an agency as chronically overworked as the EEOC would either begin or continue to investigate charges for which it has authorized an alternative avenue of relief. In most such cases, the charge will simply go to the bottom of the pile. Although after 180 days this result comports with congressional intent, see S.Rep. No. 92–415, at 23, prior to 180 days it conflicts with section 2000e–5(b)'s unambiguous command.

178 F.3d at 1346.

In response to the employee's and the EEOC's argument that requiring this wait would be futile, the *Martini* court wrote that Congress understood EEOC's limited resources but "hoped that recourse to the private lawsuit will be the exception and not the rule." *Id.* at 1346–47, quoting 118 Cong. Rec. 7168. The court explained that the regulation is not consistent with Title VII because it gives the EEOC too much of an incentive not to investigate all claims:

> Without authority to allow early suits, the EEOC would face more internal pressure, along with external pressure from complainants, to improve its investigatory capacities—for example, by streamlining its procedures for handling charges, by setting higher case clearance goals, by improving training, or by reallocating staff and other resources among regions or between national and regional offices—so that it could resolve as many charges as possible within 180 days. If such efforts proved inadequate to achieve statutory compliance, then the Commission would be forced to ask Congress to appropriate additional funds. Whether authorizing early private suits is preferable to enlarging the Commission's budget is a question for Congress, not the EEOC or this court. We conclude only that greater compliance with the mandatory duties that Congress expressly prescribed for the EEOC in section 2000e–5(b) will occur

when all complainants must wait 180 days before filing suit than when the Commission may authorize them to sue earlier.

178 F.3d at 1347.

Thus, while the *Martini* court found that 29 C.F.R. § 1601.28(a)(2) does not violate Section 2000e–5(f)(1) and is consistent with Congress's intent to allow the complaining party to pursue his own remedy swiftly when the agency is unlikely to fulfill its mandate within 180 days, the court also found that the regulation was contrary to Section 2000e–5(b) and to the legislative history regarding the 180–day period. *Martini*, 178 F.3d at 1344–47. Applying the *Chevron* standard, the court then concluded that Congress clearly intended to prohibit private suits within 180 days after a charge is filed. 178 F.3d at 1342, 1347. The court struck down the agency's regulation, reasoning that it "undermine[d] [the EEOC's] express statutory duty to investigate every charge filed, as well as Congress's unambiguous policy of encouraging informal resolution of charges up to the 180th day." *Martini,* 178 F.3d at 1347. The court did so in the explicit hope that shutting the "safety valve" of the early right-to-sue letter would keep the pressure on—either on the EEOC to do a better job or on Congress to provide more resources to the EEOC. *Id.*

This court finds much of the *Martini* opinion persuasive, including those portions concluding that the regulation is not inconsistent with Section 2000e–5(f)(1) and that the regulation "furthers Congress's intent to 'allow the person aggrieved to elect to pursue his or her own remedy ... in the court where there is agency inaction, dalliance ... or unsatisfactory resolution.'" See *Martini*, 178 F.3d at 1345. However, the final step in the court's analysis, in which the court turned away from Section 2000e–5(f)(1) and the effects of an early right-to-sue letter on the recipient of that letter, and focused exclusively on Section 2000e–5(b) and on the policy goal of

bringing long-term pressure to bear on the agency and Congress, goes beyond a persuasive application of *Chevron* principles. See *Berry*, 75 F.Supp.2d at 892 (rejecting *Martini*'s *Chevron* analysis because Title VII and its legislative history do not unambiguously express congressional intent to create 180–day minimum investigation period).

Under *Chevron*, the court must ask "[f]irst, always ... whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842, 104 S.Ct. 2778. There is obviously some tension between Section 2000e–5(f)(1)'s grant of authority to dismiss a charge on the 180th day without regard for the status of the EEOC's processing of the charge and Section 2000e–5(b)'s mandate that the EEOC "shall investigate" every charge. This court is not persuaded that Congress has directly addressed the precise question at issue—whether an "aggrieved person" under Title VII can obtain a right-to-sue letter and bring suit before the EEOC has processed his charge for 180 days. The relevant legislative history does not resolve the statutory ambiguity. Congress was aware of the competing concerns when it passed the statutory provisions in question. See *Martini*, 178 F.3d at 1345, citing 118 Cong. Rec. 7168 (180–day provision is designed to make sure that the person aggrieved does not have to endure lengthy delays); 178 F.3d at 1347, citing 118 Cong. Rec. 1069 (180–day period is a "private filing restriction"); 178 F.3d at 1346–47, quoting 118 Cong. Rec. 7168 (Congress "hoped that recourse to the private lawsuit will be the exception and not the rule"); see also *Berry*, 75 F.Supp.2d at 892 (legislative history discussed in *Martini* does not establish clear congressional intent to establish a 180–day minimum investigation period).

By declaring an ambiguous record of congressional intent unambiguous, the *Martini* decision embraced Congress's policy preference for administrative resolution of complaints, but it did so at the

expense of other congressional policy choices. *Martini* reflects an explicit policy choice to try to bring pressure on the EEOC and Congress to speed up agency action. The decision does so through the mechanism of forcing many complaining parties to spend 180 futile days waiting for agency action that everyone involved is confident is not going to occur at all. See *Commodari*, 89 F.Supp.2d at 382 ("The notion that invalidating early right-to-sue letters will spur the EEOC to action ignores the realities of the EEOC's caseload and the level to which it has been funded in recent years.").

In other words, under *Martini*'s reasoning, the way to improve enforcement in the future is to penalize with futile delay those who seek a remedy today.[1] This court respectfully disagrees. The *Martini* analysis goes beyond statutory interpretation and instead intrudes into the agency's responsibility for balancing its limited resources with expanding responsibilities. This approach strikes at the very heart of *Chevron* deference. Where congressional intent on the precise issue at hand is unclear, as it is here, the court may not "simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778. Instead, the court must defer to an agency regulation if it is reasonable. *Id.* (agency has the power to fill gaps left by Congress).

The EEOC regulation, 29 C.F.R. § 1601.28(a)(2), is a reasonable response to rapidly growing caseloads that is consistent with the policy balance struck by Congress in Title VII. If a complaining party and attorney are prepared to pursue their case without the assistance of an EEOC investigation (one that would take many months or longer to complete), an early right-to-sue letter allows the agency to use those investigative resources for cases in which complainants do not have as many resources of their own. In *Horne v. Schult Homes*, Judge Miller explained in detail why he did not agree with *Martini* on this point. See 1999 WL 1953131, at *5–*6. This court has nothing further to add to his discussion.[2]

This court's disagreement with *Martini* carries over to the analysis in *Simler*, which is the focus of defendants' argument in this case. In *Simler*, however, Judge Barker did not actually follow *Martini* in every respect. Rather than holding that the EEOC is prohibited from issuing a right-to-sue letter sooner than 180 days, as in *Martini*, Judge Barker concluded that the EEOC may issue a right-to-sue letter once it has conducted an "investigation," even if that is done before 180 days have passed. *Simler*, 110 F.Supp.2d at 889–90. Judge Barker also disagreed with *Berry*'s conclusion that an EEOC official's determination that the issuance of an early right-to-sue letter is appropriate constitutes a sufficient "investigation" to comply with Section 2000–e 5(b)'s investigation mandate. *Id.*, citing *Berry*, 75 F.Supp.2d at 892.

The *Simler* approach is no more persuasive than *Martini*, and it also leaves open the issue of just how much is required of the EEOC to satisfy this statutory requirement. *Simler* invites further litigation over just how much investigation is

---

1. The remedy ordered in *Martini* for the premature suit was to dismiss it without prejudice and to require the plaintiff to give the EEOC a total of 180 days to investigate her claim. The dismissal was ordered in June 1999 in a case that had arisen in 1995 and had resulted, after an eleven-day jury trial, in a judgment favorable to the plaintiff. From the dismissal of the parties' petitions for writs of certiorari, however, it appears that a settlement was reached by early 2000.

2. For those who believe pressure for more resources for EEOC would be useful for Title VII enforcement, perhaps the same result could be achieved by upholding the regulation, which would allow employers anxious for the opportunity for informal conciliation to bring political pressure to bear on EEOC or the Congress.

enough to permit an early right-to-sue letter. Such litigation over timing and the choice of forum would not be conducive to prompt and just resolution of the underlying complaint of discrimination and enforcement of federal employment discrimination laws.

In addition, for employees and employers who actually wish to seek informal resolution of their disputes, the filing of an "early" lawsuit should not be an obstacle. In this court and virtually any other federal court, alternative dispute resolution is a subject that comes up at the earliest stage of the case. See Fed.R.Civ.P. 16(c)(9).

*Conclusion*

For the reasons discussed above, this court follows the Ninth Circuit in *Brown,* the Eleventh Circuit in *Sims,* Judge Dillin in *Parker v. Noble Roman's,* and Judge Miller in *Horne v. Schult Homes.* Defendants' motion to stay and remand is hereby denied. The court will hold a scheduling conference on Thursday, December 14, 2000, at 4:30 p.m. in Room 330, U.S. Courthouse, Indianapolis, Indiana, to establish a prompt schedule for bringing this case to trial. Enclosed with this entry is a suggested form of case management plan. Counsel shall confer and shall submit a proposed plan no later than December 12, 2000. In addition to the usual matters, counsel and their clients might also consider whether it would be more convenient to the parties and witnesses to try this case in Indianapolis rather than New Albany.

So ordered.